AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
for the
Southern District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>T-Mobile Account (619) 314-1122 and/or IMEI 350183731522645 | Case No. '22 MJ1660 |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-3, incorporated herein by reference.

located in the __Southern__ District of __California__, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B-3, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21, USC secs. 841 & 846 | Distribution of fentanyl and conspiracy to do the same |

The application is based on these facts:
See Attached Affidavit of FBI Special Agent Christopher Whitehead incorporated herein by reference.

- ☐ Continued on the attached sheet.
- ☐ Delayed notice of _____ days *(give exact ending date if more than 30 days: _____)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Christopher Whitehead*
*Applicant's signature*

Special Agent Christopher Whitehead, FBI
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by __telephone__ *(specify reliable electronic means)*.

Date: ~~05/06/2022~~ 5/11/22

*William V. Gallo*
*Judge's signature*

City and state: San Diego, California    Hon. William V. Gallo, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF
## APPLICATION FOR SEARCH WARRANT

I, Christopher Whitehead, a Special Agent of the Federal Bureau of Investigation and a Task Force Agent with the Drug Enforcement Administration, having been duly sworn, depose and state as follows:

1. This affidavit is in support of an application by the United States of America for a search warrant for T-Mobile (dba Metro PCS Communications Inc.) and AT&T (dba Cingular Wireless), as described in Attachments A-1, A-2, and A-3, to search the accounts associated with the following cellular telephone numbers and International Mobile Equipment Identity ("IMEI") numbers:

**Subject Account 1**
**Phone #** 858-987-6656
**IMEI #** 350603978380860
**Service Provider:** T-Mobile (dba Metro PCS Communications Inc.)
As set forth in Attachement A-1

**Subject Account 2**
**Phone #** 858-353-1912
**IMEI #** 354009844716145
**Service Provider:** AT&T (dba Cingular Wireless)
As set forth in Attachement A-1

**Subject Account 3**
**Phone #** 619-314-1122
**IMEI #** 350183731522645
**Service** Provider**:** T-Mobile (dba Metro PCS Communications Inc.)
As set forth in Attachement A-1

(the "subject accounts") for subscriber information, telephone toll data, and cell-site geolocation data from September 28, 2021 to September 30, 2021. There is probable cause that these records and information constitute evidence, fruits, and instrumentalities of violations of federal criminal law, namely, Title 21, United States Code Sections 841 and 846, as described in Attachment B. This affidavit and application are sought pursuant to Rule 41 of the Federal Rules of Criminal Procedure

and 18 U.S.C. § 2703(a), which applies to providers of electronic communication services. In this case, as will be shown below, T-Mobile and AT&T provide electronic communication services in the form of cellular and wireless telephone service for the subject account.

## EXPERIENCE & TRAINING

2. I am a Special Agent with the Federal Bureau of Investigation (FBI) and I have been so employed since January 2019. As such I am a law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7), who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 18, United States Code, Section 2516. I am also a federal law enforcement officer within the meaning of Rule 41(a)(2)(C) of the Federal Rules of Criminal Procedure. I am authorized under Rule 41(a) to make applications for search and seizure warrants and to serve arrest warrants. I am authorized to investigate violations of laws of the United States and to execute warrants issued under the authority of the United States. I was previously assigned to the Cross Border Violence Task Force (CBVTF). The CBVTF investigates crimes committed by drug trafficking organizations (DTOs), and I have been involved in numerous investigations involving individuals and criminal organizations involved in drug trafficking, money laundering, and kidnapping. Prior to my assignment with the CBVTF, I completed the 21-week FBI Academy and was trained in investigative techniques, procedures, and strategies. I have also received specialized training in transnational organized crime, money laundering, and drug trafficking techniques utilized by the DTOs. Through my investigations, my training and experience, and discussions with other law enforcement personnel, I have become familiar with the tactics and methods used by drug traffickers to smuggle and safeguard controlled substances, to distribute controlled substances, and to collect and launder the proceeds from the sale of controlled substances and the clandestine manufacturing of narcotics.

AFFIDAVIT IN SUPPORT OF APPLICATION
FOR SEARCH WARRANT

-2-

3. I am currently assigned to the Drug Enforcement Administration (DEA) San Diego Field Division's (SDFD) Integrated Narcotics Task Force (NTF) Team 10, and have been since December 2020. NTF Team 10 is comprised of DEA SAs, Task Force Agents (TFAs) from the FBI and Homeland Security Investigations (HSI), and Task Force Officers (TFOs) from the San Diego Police Department (SDPD), San Diego County Department of Health Care Services (DHCS), and San Diego County District Attorney's Office. NTF Team 10 primarily investigates illegal drug trafficking organizations (DTOs) operating in the United States and internationally, including DTOs whose operations involve the distribution of wholesale quantities of fentanyl, oxycodone, hydrocodone, other controlled pharmaceutical substances, cocaine, methamphetamine, marijuana, heroin, and hashish in and around the San Diego, California area. Team 10 focuses on investigating illegal drug distribution related to drug overdose deaths in San Diego County. Since joining Team 10, I have been involved in approximately 25 narcotics investigations for violations of the California Health & Safety Code and Title 21 of the United States Code (USC).

4. In the course of my duties, I have been a case agent directing drug-related investigations. I have participated in many aspects of criminal investigations including reviewing evidence, conducting physical and electronic surveillance, and executing search and arrest warrants. I have interviewed defendants and witnesses while conducting various investigations. I have gained a working knowledge and insight into the normal operational habits of narcotics traffickers.

5. I have been involved in numerous arrests of persons for the possession of narcotics for sale, and numerous arrests of persons for the possession of controlled substances, including fentanyl. During these investigations, I have spoken to drug users and dealers who have told me the different ways they use and package narcotics. I am familiar with the signs and symptoms of someone being under the influence of narcotics. I have become familiar with narcotics slang and jargon as it pertains to the

AFFIDAVIT IN SUPPORT OF APPLICATION
FOR SEARCH WARRANT

-3-

sales and transportation of narcotics, including fentanyl. I have spoken to, arrested, and assisted in the arrest of individuals under the influence of a controlled substance.

6. I am aware it is common practice for drug trafficking organizations to work in concert utilizing cellular telephones. I am aware drug trafficking organizations frequently communicate with the individual responsible for transporting controlled substances and/or bulk cash from one destination to the next. These communications can occur before, during, and after the controlled substances and/or bulk are smuggled into of the United States.

7. The facts and conclusions set forth in this affidavit are based on my own personal knowledge; knowledge obtained from other individuals during my participation in this investigation; my review of documents and records related to this investigation; communications with others who have personal knowledge of the events, details, and circumstances described herein; and information gained through my training, experience, and communications with colleagues.  Because this affidavit is submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth each and every fact that I or others have learned during the course of this investigation.  Dates, times, and amounts are approximate.

## STATEMENT OF PROBABLE CAUSE

8. On September 30, 2021, at approximately 9:55 a.m., SDPD Officers responded to a call regarding a female who was not breathing at 7050 Miramar Road, San Diego, California. SDPD Officers and paramedics arrived on scene shortly thereafter and discovered a female, later identified as SG, lying deceased on the floor of a bathroom in the building.  SDPD Officers observed suspected narcotics and narcotics paraphernalia near SG's body in the bathroom, including a small purple plastic baggie which contained a blue pill with "M-30" imprinted on it. I know that blue pills imprinted with "M-30" are

AFFIDAVIT IN SUPPORT OF APPLICATION
FOR SEARCH WARRANT

-4-

commonly counterfeit oxycodone pills which contain fentanyl. SDPD officers contacted DEA NTF Team 10, whose agents soon arrived at the scene.

9. While processing the scene, Team 10 agents located a cellular telephone on the bathroom counter and found that the telephone was unlocked. In light of SG's suspected overdose, agents feared that others who ingested the same narcotics also could be in danger, and therefore searched SG's cellular telephone to find her source of supply. The search of SG's cellular telephone revealed that it was assigned cellular telephone number 858-987-6656, which is **Subject Account 1**. Database searches connected that phone number to the IMEI number and service provider set forth for **Subject Account 1**.

10. SG's phone revealed recent communications between SG and phone number (858) 353-1912 (subsequently identified as belonging to Jamie KORYN as set forth below), where SG asked KORYN for "blues," which is a term commonly used to describe counterfeit pills containing fentanyl. For example, on September 27, 2021, SG texted KORYN: "Hey can I pick up 2 blues [counterfeit oxycodone pills made of fentanyl][1] please." KORYN replied: "Who is this." SG responded: "Sherie I used to pick up from Danielle." Two days later, on September 29, 2021, SG again texted KORYN: Can I please pick up." KORYN replied: "Yes . . . My bf [boyfriend] has some how many u need . . . he chages $8 a blue." KORYN then asked, "How many you need." SG responded: "3 [pills] where are you." KORYN replied: "La Jolla." SG said: "Send address." KORYN then sent her address: "3737 Nobel dr." Immediately following these text messages SG called KORYN eleven times before receiving a call back from KORYN.

11. On September 30, 2021, agents conducted surveillance of 3737 Nobel Drive and observed a white male with distinctive neck tatoos, later identified as Jonathan Miguel LOPEZ, get into a grey sedan and drive away. Soon after, agents observed KORYN enter the same residence that LOPEZ had just left. While this surveillance was ongoing, agents

---

[1] My interpretation of coded language is set forth in brackets and is based on my training, experience, and knowledge of this investigation.

AFFIDAVIT IN SUPPORT OF APPLICATION
FOR SEARCH WARRANT
-5-

acting in an undercover capacity assumed SG's identity and used her phone to text KORYN: "Girl can I get 3." KORYN replied: "Ya."

12. Based on the circumstances surrounding SG's death and the investigation that followed, agents obtained a warrant to search KORYN's residence, located at 3737 Nobel Drive, Unit 2117, La Jolla, California. On October 8, 2021, at approximately 8:30 a.m., agents executed the warrant at KORYN's residence and located KORYN and a minor inside the apartment. During the execution of the search warrant, agents also observed LOPEZ attempting to flee out the bedroom door leading to the attached patio. Agents caught up to LOPEZ, detained him, and conducted a pat-down search, revealing that LOPEZ had a digital scale and a switchblade knife in his pants pockets.

13. During the search of the residence, investigators found approximately 155 blue circular pills imprinted with "M" on one side and "30" on the other, consistent with the characteristics of counterfeit oxycodone pills containing fentanyl and commonly referred to as "Blues," on the countertop inside the master bathroom. Investigators also found approximately 73 grams of methamphetamine in the residence. Investigators also found two firearms hidden under the mattress in the master bedroom. Investigators also found LOPEZ's clothing in the residence.

14. KORYN waived her Miranda rights and gave consent for agents to search her phone. KORYN said that SG had contacted her multiple times looking for Blues and that KORYN had sold SG Blues approximately 3-4 times. However, KORYN denied selling pills to SG on September 30, 2021.

15. After waiving his Miranda rights, LOPEZ told agents that KORYN had been his girlfriend for about two months. He also said that the methamphetamine in the residence was his. LOPEZ said that the firearms under the bed were not his, but he admitted to

AFFIDAVIT IN SUPPORT OF APPLICATION
FOR SEARCH WARRANT

-6-

touching them a few days earlier and said that his DNA would likely be on the firearms for that reason. Regarding the digital scale, LOPEZ said he had found it inside the residence and kept it because he thought it was "cool."

16. Based on KORYN's text messages to SG, I submit that there is probable cause to believe that KORYN sold fentanyl pills to SG in the days prior to SG's death. Based on KORYN's text to SG stating that her boyfriend had pills to sell,[2] on agent observations that LOPEZ was staying in KORYN's apartment, on LOPEZ's admission to owning the methamphetamine, on the digital scale in LOPEZ's pocket, and on the agents discovery of a large amount of fentanyl pills in the residence, I submit that there is probable cause to believe that LOPEZ was involved in KORYN's sale of fentanyl pills to SG. .

17. Agents found a blue Apple iPhone in a pink case in KORYN's hand. Agents searched that phone after receiving consent (and later with a state court search warrant) and determined that it was assigned telephone number 858-353-1912, **Subject Account 2**. Agents found a Samsung phone in LOPEZ's pants pockets. A search of that phone (pursuant to a state court search warrant) confirmed that it was assigned telephone number (619) 314-1122, **Subject Account 3**.

18. Agents later ran database checks on all three of the Subject Accounts and confirmed that the phone numbers, IMEI numbers, and Service Providers listed for each Subject Account is accurate. That is, each of the phone numbers is associated with the corresponding IMEI number, and the service provider listed above provides cellular phone service to each of those phone numbers.[3]

---

[2] KORYN later told agents that the pills were hers, and that she lied when she said they were her boyfriends so that she could charge more.

[3] Initial subscriber information for Subject Account 2, used by KORYN, returned to the name "Angelina Brink." However, after running address checks on the Nobel Drive address provided to SG in the text messages, agents identified KORYN.

-7-

AFFIDAVIT IN SUPPORT OF APPLICATION
FOR SEARCH WARRANT

19. Based upon my training and experience and the investigation in this case, I believe that KORYN and LOPEZ likely used the **Subject Accounts** to coordinate the distribution of narcotics. Agents seek the information requeted in Attachment B to further the investigation into SG's overdose death and the narcotics trafficking activities of KORYN and LOPEZ, their source(s) of supply, and any other associates who may have been involved in these activities.

20. Based on my training and experience, and my consultation with other law enforcement officers, I am aware that both T-Mobile and AT&T routinely collect and stores data for the electronic communication accounts to which it and other providers issue telephone numbers. The data includes: (i) subscribers' contact and billing information; (ii) detailed information concerning subscribers' incoming and outgoing telephone calls; (iii) detailed information concerning subscribers' outgoing direct calls, text message, and SMS messages; and (iv) detailed information concerning cell-site geo-location data.

21. In particular, I know that cell phones connect to a provider's network through cell towers or cell sites. The particular tower or site may change as a phone moves from one location to another. Providers automatically record and retain this connection data as part of the subject account. Records and data identifying the towers or sites to which a phone connected therefore tend to identify the phone's and phone user's location at particular times.

   a. I also know that different providers use the speed with which signals travel between cell phones and cell towers ("per call measurement data," or "PCMD"), as well as other data, to better calculate and record the location of phones accessing their networks.  Different providers may use different terminology to describe PCMD. For example, AT&T has referred to the resulting location information as "NELOS" data; Verizon, as "Real Time Tool" or "RTT" data; Sprint, as PCMD; and T-Mobile, as "timing advance" data.

AFFIDAVIT IN SUPPORT OF APPLICATION
FOR SEARCH WARRANT

-8-

22. This application requests such per call measurement data (by whatever name the provider uses) for the subject accounts for the following date and time range: September 29, 2021 beginning at 0800 UTC through September 30, 2021 at 0800 UTC. During this time period, the subscriber for the subject account is believed to have been located in the vicinity of 3737 Nobel Drive, San Diego, California.

23. Given these facts, I seek a warrant to search the subject account for the records and information in Attachment B.

### PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE

24. The United States is unaware at this time of other attempts by the U.S. government to obtain this data by other means.

*Christopher Whitehead*
CHRISTOPHER WHITEHEAD
SPECIAL AGENT
FEDERAL BUREAU OF INVESTIGATION

Subscribed and sworn to before me this __XX__ day of May 2022.
11th
*William V. Gallo*
WILLIAM V. GALLO
U.S. MAGISTRATE JUDGE

AFFIDAVIT IN SUPPORT OF APPLICATION
FOR SEARCH WARRANT

-9-

## ATTACHMENT A-3

T-Mobile (dba Metro PCS) hosts the electronic communication account associated with the telephone number (619) 314-1122 and/or IMEI 350183731522645 that is the subject of this search warrant and search warrant application (the "subject account").

T-Mobile is an electronic communication service provider whose primary computer information systems and other electronic communications and storage systems, records, and data are located at 4 Sylvan Way, Parsippany, New Jersey 07504.

ATTACHMENT B-3

**I.**     Service of Warrant

The officer executing the warrant shall permit the Provider in Attachment A, as custodian of the electronic files described in Section II below, to locate the files and copy them onto removable electronic storage media and deliver the same to the officer.

**II.**    Items to be Seized

Agents shall seize the following records, data, and information covering September 28, 2021 to September 30, 2021 and maintained by the Provider for the subject account identified in Attachment A:

  a. Subscriber information, including:
       i. Names;
      ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);
     iii. Local and long distance telephone connection records;
     iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;
      v. Length of service (including start date) and types of service utilized;
     vi. Telephone or instrument numbers, including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");
    vii. Other subscriber numbers or identities; and
   viii. Means and source of payment (including any credit card or bank account number) and billing records.

  b. Records and other information about past wire or electronic communications sent or received by the subject account, including:

     i. the date and time of the communication;
    ii. the method of the communication;
   iii. the source and destination of the communication, such as the source and destination telephone numbers (call detail records), email addresses, or IP addresses; and
   iv. Cell site locations and sectors for all outgoing and incoming voice, SMS, MMS, and Data communications; and
    v. All available PCMD reports, to include timing advance data, for: September 29, 2021 beginning at 0800 UTC through September 30, 2021 at 0800 UTC.

which are evidence of violations of 21 U.S.C. §§ 841 and 846 (distribution of fentanyl and conspiracy to do the same).